My name is Mark Caldwell. I'm here this morning representing Ms. Banuchi in this social security matter. Preliminarily, I would like the court's permission to reserve two minutes for rebuttal, if I may. There's an initial issue that needs to be taken care of, and I think you know what it is. Bunnell v. Barnhart? Yes. I think that takes issue number one off the table in front of this panel. When did you discover that case? When I was looking at things about a week ago before oral argument, I sent you the letter that said, there's the case and this is what I think it does. Okay. Thank you, counsel. We appreciate your concession. That leaves us still with quite a few important issues. The issues involve the treating physician, Dr. Morse, the agency's own examining psychiatrist, Dr. Narvaez, the other examining psychologist, Dr. Lang, the agency's medical expert who testified at the hearing, Dr. Nathan. There's two other doctors involved in this case that are important, in my opinion, only because the ALJ relied upon them. Let me ask you a question. Is this disability that stems from depression? Fibromyalgia is a mixed bag. Fibromyalgia and depression are kissing cousins, and the literature says that I think the Lang case, by the way, this court's case in Lang talks about that, that the literature says that depression stems from fibromyalgia and is part of the syndrome, not the other way around. What did the Social Security Administration base its finding of disability on? You're talking about the ALJ's decision? Yes, the ALJ's decision said, I'm relying on Dr. Stein, the consultative examiner, who decried the paucity of information that was sent to him as background information. But what condition was it? What did they identify as the cause of the disabling depression or the disabling condition? Okay, the ALJ specifically said the listing of impairments at 12.04, which is the listing for depression. Depression. Depression. So it seemed that the issue was when, what's the onset date of depression? Is that what one of the issues is? It's what one of the issues is, but it's not the only issue, because just because the ALJ looked at one of the impairments doesn't mean that's the only impairment to be looked at. The combination of impairments and the interplay between the physical and the emotional is what needs to be looked at. And that's what Dr. Narvaez, the agency's own examining psychiatrist, in fact looked at. He said that there's an interrelationship between this woman's pain from fibromyalgia and the depression that she suffers from. Well, she has a lot going on. There's no two ways about that. But the ALJ basically says it's depression, and when the depression becomes disabling is when her husband commits suicide, right? Actually, he only inferred that. I mean, because a lot of people can have depression but not be disabled from the depression, correct? Of course. Viewing the evidence as a whole, the undersigned finds there is a reasonable basis for concluding the claimant's depression deteriorated significantly following the death of her husband. So they fixed that as the point. That's what he relied upon for the 12.04 finding regarding a listing of impairments at step three of the sequential evaluation process. However, I'm telling the Court what it well knows, you have to go beyond step three to steps four and five when you assess the person's residual functional capacity based upon the combination of all of their impairments. And that's part of the error that the ALJ made. Not only did he engage in the selective analysis of the evidence, but he pretty much stopped at step three of the sequential evaluation process, said the lady meets a listing, and I'm done talking about this case. By the way, let me say as far as the ALJ went, I'm not going to disagree with him, because the medical examiner, not examiner, the medical expert who testified at the hearing, Dr. Nathan, said, yeah, I'm looking at 12.042, and I'm telling you I can't go back as far as the onset date based on that. Okay, fine. But that isn't the end of the discussion. What makes this case different than just obviously she has a lot of problems, there's a lot of different views about, you know, what caused what, but what makes this any different than just the court resolved certain conflicts in the evidence and looking at it in terms of is there substantial evidence to support that? What makes this any different than that? Because the issue isn't just substantial evidence. The issue is legal error. Substantial evidence may well support the ALJ's determination that the woman became disabled based upon 12.04 as of the date he picked, and I just said that I don't necessarily disagree with that. The legal error involved is by not looking at the combination of all of the impairments and by a selective analysis of the evidence, and the commissioner's decision can only be upheld if supported by substantial evidence number one and number two be free from legal error. And then the error was in failing to apply the residual functional capacity language or whatever from the regulations? Well, I think he may have gone on and used residual functional capacity language, but the point is he didn't make that analysis based upon the combination of all of the impairments and by looking at all of the evidence. A couple examples of that, if I may, real quickly. I mean, really, he looked at two things, Dr. Stein's consultative examination and Dr. Angulo's consultative examination. Let's talk about Stein first real quickly. The interesting thing about Stein is he gave no opinion.  I think if, from what I hear, you're saying that there was substantial evidence to support the March 5th, I think it was March 5th, onset date. Sure. Okay. But even accepting that, she was still disabled because he erred in finding at step four that she had the residual functional capacity to perform some work. Is that what you're arguing? It was step four or step five, but it would be the same either way, yes. Okay. Step five. And you're saying that in finding that she had residual functional capacity, he failed to take into account what? He failed to take into account Dr. Narvaez's opinion. He failed to take into account – That said what? Well, Dr. Narvaez said she was impaired all the way back to 1993, and that resulted in the commissioner's own vocational expert telling him – So he improperly rejected or simply did not sufficiently discuss that doctor's opinion? Yeah. He has it in his opinion, but sufficiently discussing it is exactly the correct language to use. Okay. And he ignored entirely his own medical expert at hearing who said, I have no problem with that opinion. And, you know, you could argue, well, that medical expert wasn't a psychiatrist, but the interesting thing about that is that's the medical expert who he relied on when he said listing 12.04 was the onset date. So you can't have it both ways. Where I'm losing you is you say there's legal error because the ALJ didn't consider the combination of impairments, just the depressive aspect of it. Is that right? In setting the onset date. Yeah, but I don't understand how you can get there because it says here at the beginning under rationale, in the interest of economy, the undersigned adopts by reference the summary of the evidence set forth in the previous decision dated January 16. During the hearing, the medical expert testified with some certainty that the evidence that he reviewed indicated that the claimant's mental impairment equaled the severity of listing 12.04 due to the combination of the claimant's physical and mental impairments. So it appears to me from everything that I've read that he is considering the combination of the impairments. And then he says the problem, however, is pinpointing a specific date as to its onset, its meaning the combination of physical and mental. And then he goes through and he tells us exactly why he pinpoints the onset and he decides that it's the combination of the two, but it's the problem that happened with her, was it her husband, that tipped her over and he picks that as a specific date. So it seems that he evaluated and discussed exactly what you're telling us he didn't evaluate and discuss. Wrong, Your Honor. Oh, that's why I shoot it out there. He did consider the combination of impairments at Step 3 and stopped. He then did not go on and talk about how the combination of impairments would be disabling at Steps 3 and 4. I'm 43 seconds left with my rebuttal. With the Court's permission, I'd like to reserve that. All right. Thank you. Thank you. You've got the argument, straightforward. Please tell us who you are. Good morning. My name is Deborah Meacham. I represent Joanne Barnhart, the Commissioner of Social Security. Is there an answer? Pardon? Is there an answer? An answer? To what he just said. Oh, yes, there is plenty of answers to that. If you look at the medical evidence relating to the time period relevant to this case, which is her alleged onset of disability date in 1993 through March of 95, when the ALJ did find her disabled, all of the medical evidence during that time does not indicate that her impairments alone or in combination resulted in disabling functional limitations within the meaning of the Social Security Act. The Act, as you know, requires a severe impairment resulting in functional limitations, which precludes all substantial gainful activity for a consecutive 12-month period. The agency's position is that during this 16-month relevant time period, the objective medical evidence did not so indicate. Counsel for the plaintiff indicates that the ALJ looked at only two things. I submit to you that the ALJ did consider all of the evidence relevant to this case. Just a review of that medical evidence indicates that on her alleged onset of disability date, she stated she simply had joint pain, and she stated that her illness came up after she quit her last job, which indicates that she left her last job for reasons other than a disabling impairment. Also on her alleged onset of disability date, she went to her physician complaining of this joint pain and was assessed with arthralgia, which subsequently became diagnosed as fibromyalgia. But during the following months, she received treatment, and her treating physicians indicated that her symptoms did improve with treatment at times. She underwent several functional limitation and physical examinations by, for one, Dr. Stein, the consultative examiner, who in December 1994 reported that she had a normal physical examination. She had 5-5 strength throughout, normal gait, normal reflexes, normal neurological senses. And he assessed her with arthralgia and fibromyalgia, but he felt that he wasn't certain what the ideology of her complaints were. Nonetheless, regardless of what her condition was at the time, the objective findings indicate that her symptoms didn't result in disabling functional limitations. The ALJ also discussed the treatment notes of the treating physician, Dr. Morse, who during that time period, he didn't limit her activities in any way. He continually monitored her for follow-up conditions and pain medications, but he didn't restrict her activities in any way. He didn't indicate that she should refrain from doing anything because of this condition. He did refer her to a neurologist, who significantly during this relevant time period also performed a physical examination. Dr. McDermott, in March of 1994, this is six months after her alleged onset date, reported also, as did Dr. Stein, that she had a normal physical examination with 5-5 strength throughout and no specific functional limitations. Even though throughout this time the diagnoses were unclear, it really doesn't matter. The commissioner concedes that she did have fibromyalgia and resulting depression, but the combination of these two impairments did not become disabling until March of 1995. Did the medical expert at the time of the hearing testify to the contrary? The medical expert at the hearing testified that as of the hearing date, yes, her condition did meet the requirements for disability, but he was uncertain when that occurred. He couldn't relate back. He did not specify that that disability went back to a time period prior to March. He offered some kind of an opinion that she would be unemployable in the economy or something, which is typically the province of the vocational expert, or am I wrong in that? Yes. The vocational expert is given a claimant's residual functional capacity and then asked whether or not jobs exist in significant numbers for a person that has those limitations. Did that happen in this case? Yes. The vocational expert testified at the hearing, at the supplemental hearing that was held, and based upon the RFC that was assessed by the ALJ, based upon all the objective findings during the relevant time period, the VE testified that the claimant could still perform. Your opponent would say that when the ALJ put the hypothetical to the vocational expert, he did not include those things which would have been disabling, I suppose, at an earlier date. The ALJ did include, actually, in a series of questions, all of the limitations that were subsequently reported by the treating and examining physicians. And some of those questions to the VE did indicate that if those opinions were accepted as true, the claimant would have been disabled. However, all of those opinions were dated long after the relevant time period to this case. All were discounted by the ALJ for specific and legitimate reasons. This court is faced with the dilemma of determining whether or not the ALJ's onset date is supported by substantial evidence and free of legal error. Based upon the information we've set forth in our brief in here today, we submit to you that it is supported by substantial evidence and free of legal error that she was disabled as of March 1, 1995. I did want to address some of the other issues that were mentioned in the plaintiff's brief. He basically talks about the ALJ ignoring the medical expert's testimony. And if you look at the ALJ's decision after the supplemental hearing, he engages in a very thorough discussion of the medical expert's testimony at the hearing. If the court has any questions. No, thank you. Thank you. You may respond, counsel. Normally I don't like to read from the record, but there's a statement that the ALJ considered all the evidence. And it may be that he considered all of the evidence, but when he made a finding, he specifically said the vocational expert was instructed to assume the existence of a hypothetical individual, taking into consideration Dr. Stein's clinical findings and assuming the presence of depression at the level suggested by Dr. Angulo and asked whether that person could perform past work. Excerpts of record 246-47. 246-47. Where is that? Viewing the evidence as a whole? I have the appellant's excerpt of record, and it's numbered sequentially. Let me do it this way. It's at the ALJ decision 2526. Oh, okay. That makes it easier to read. Hold on. I have the 246 now. I may have my numbering mixed up. Dr. Navarez fails to explain the basis. Which one? What did you quote? It's the ALJ decision at 25. Got it. Going over to 26, I think. Oh, yeah. But that's my point. You know, I mean, he can discuss A through Z if he wants to, but if he says, I'm only going to look at X and Y, then. . . Well, that's not what he said. I mean, we get this all the time. A case involves thousands of witnesses, thousands of documents, then there's a decision. The decision refers to some but not the other. It's not fair to assume from that that people paid no attention to the other. He says any number of times, having examined the entire evidentiary record, the undersigned concludes, and then the undersigned sets forth a reason for his opinion. Well, every decision says I've considered the entire evidentiary record. We should ignore that? Not ignore it, but let's go on and look at what he actually says. He actually says, I asked the vocational expert a question based on this and this, and that's what I'm basing my decision on. That's why I find this person can perform this work. I'm not saying that it's irrelevant that he discussed everything else, but I think at the bottom line is you have to look at what he said he was actually basing the finding on, and that is important here because really. . . Prior to that date, the claimant was capable of performing some of her past relevant work as well as sedentary work, talking about March 95. So he concluded, as a matter of fact, that she was capable of performing her work before March 1995, but then it was the personal problem that pushed her over the edge. I mean, that seems fully discussed and supported by substantial evidence, doesn't it? Yeah, and I've never said that part wasn't supported by substantial evidence, but I think you look in vain at this decision for an analysis at Steps 4 and 5 regarding residual functional capacity about where we go beyond saying that she met Listing 12.04 at Step 3. I know I'm way over my time, and I'm more than happy to respond to questions, but I don't like to violate the court's rules either. All right. Thank you, counsel. The case just argued is order submitted. Thank you. And we'll call the next case, Venetian Casino Resort v. Laird McGovern, Bovis Incorporated. May it please the Court, I'm David Dial. I represent the Venetian Casino and Resort. As Your Honor, I know we are here before you based upon the evidence that we have.
judges: Thompson, Trott, Callahan